# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE VOUTSIOTIS, *et al.*, | ) | Case No. 5:23-cv-02305 |
| | ) | |
| Plaintiffs, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge James E. Grimes |
| | ) | |
| PNC BANK, NATIONAL | ) | |
| ASSOCIATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

This action arises from an allegedly fraudulent investment scheme that Plaintiffs claim cost them millions of dollars. Plaintiffs filed suit in State court, asserting claims under Ohio law. Defendants removed this action to federal court on the theory that Plaintiffs fraudulently joined a non-diverse defendant, Demetrios Koutrodimos, to prevent this case from being heard in a federal forum. Plaintiffs move to remand this matter to State court, arguing that they state colorable claims against Mr. Koutrodimos, which also entitles them to an award of fees and costs incurred from the removal proceedings. Defendants oppose returning the case to State court, request dismissal of Mr. Koutrodimos, and seek an award of their fees and costs as well.

## STATEMENT OF FACTS

### A.    Allegations in Plaintiffs' Complaint

Plaintiffs are members of the Northeast Ohio Greek Orthodox community and investors in Epitome Investment Fund, LP—a hedge fund that Constantine Antonas

created in 2013.  (ECF No. 1-2, ¶¶ 1, 38 & 39, PageID #148–49 & 155.)  Antonas held himself out as an investment advisor and represented that his Epitome Investment Fund would "achieve high risk-adjusted returns" for investors.  (*Id.*, ¶¶ 40–41, PageID #155.)  To further his investment scheme, Antonas opened several business and personal accounts at PNC and received funds from investors in Epitome Investment Fund by check or wire transfer.  (*Id.*, ¶¶ 44, 45 & 47, PageID #156.)  Antonas invested and "typically los[t] most of the [] funds apparently through incompetence or another unknown motive."  (*Id.*, ¶ 47.)  According to the complaint, he created false brokerage account statements showing positive returns to conceal the losses."  (*Id.*, ¶ 48.)

Plaintiffs allege that, throughout his relationship with PNC, Antonas worked primarily with the same employee, Mr. Koutrodimos, who served as his "Relationship Manager."  (*Id.*, ¶ 49.)  Mr. Koutrodimos worked at the PNC branch in Montrose, a town in Ohio not far from Akron.  (*Id.*, ¶ 50.)  Antonas and Mr. Koutrodimos were friends and members of the Northeast Ohio Greek Orthodox community.  (*Id.*, ¶ 42, PageID #155.)  Plaintiffs allege that Mr. Koutrodimos knew Antonas was an inexperienced investor, which "would require greater vigilance over" his accounts.  (*Id.*, ¶ 43, PageID #156.)  Mr. Koutrodimos was "required to approve" Antonas's transactions and "large withdrawals."  (*Id.*, ¶ 61, PageID #158.)

Over time, Antonas changed his banking behaviors and began transferring funds in ways that were "inconsistent with usual business practices and did not match [his] normal pattern of activity."  (*Id.*, ¶ 56, PageID #157.)  Examples of this

2

unusual behavior included:  conducting wire transfers to entities with no business relationship to Epitome Investment Fund, conducting wire transfers through Canadian banking entities with no ties to United States financial institutions, receiving large deposits and immediately transferring the funds to accounts with no ties to Epitome Investment Fund, and executing a series of transactions that each fell below federal reporting levels individually.  (*Id.*, ¶ 57, PageID #157–58.) Plaintiffs allege that Mr. Koutrodimos knew these activities were "not consistent with the stated business type of Epitome" Investment Fund.  (*Id.*, ¶¶ 64–65, PageID #159.) As a result of Defendants' conduct, Plaintiffs lost more than $20 million.  (*Id.*, ¶ 126.)

Aside from the general allegation that Plaintiffs lost millions of dollars through a fraudulent scheme that Antonas ran (*id.*, ¶ 1, PageID #148), the complaint contains little detail about that scheme.  Plaintiffs allege that Antonas's fraud would not have been possible without the conduct of PNC and Mr. Koutrodimos.  (*Id.*, PageID #149.) Antonas is now deceased.  (*Id.*, ¶ 38, PageID #155.)

### B.    Additional Facts in Plaintiffs' Motion to Remand

On October 4, 2021, Antonas committed suicide.  (ECF No. 7, PageID #201.) He did so just before several Plaintiffs planned to meet with him for an accounting of Epitome Investment Fund.  (*Id.*; ECF No. 7-1, ¶¶ 3 & 4, PageID #213.)  Within days of Antonas's death, three Plaintiffs (Karvo Companies, G&Y Group, LLC, and George Karvounides) sued Epitome Investment Fund, another one of Antonas's companies, and Antonas's estate for an accounting of the business and injunctive relief in State court.  (ECF No. 7-1, ¶¶ 6–7, PageID #214; *see also Karvo Cos. v. Antonas Capital Mgmt., LLC*, Summit C.P. No. CV2021-10-3176 (filed Oct. 7, 2021).)

3

During discovery in that suit, documents identified Mr. Koutrodimos as an individual who "communicated with, and provided services to, Antonas." (ECF No. 7-1, ¶ 12, PageID #215; ECF No. 7-4; ECF No. 7-5, ECF No. 7-6; ECF No. 7-7.) These documents consist primarily of emails showing the following:

- An email from Mr. Koutrodimos to Antonas in April 2017 regarding fees for wire transfers in February 2017 (ECF No. 7-4, PageID #276);

- Emails in January 2018 between Mr. Koutrodimos and the PNC branch manager in Montrose regarding clearing a cashier's check in the amount of $200,000 from Plaintiff Anna Karvounides that Antonas wanted to clear (ECF No. 7-5, PageID #279);

- Emails from April 2014 in which Mr. Koutrodimos introduces Antonas to a woman working to design certain medical instruments (ECF No. 7-6, PageID #285);

- A presentation of an investment strategy that PNC prepared for Antonas (ECF No. 7-7, PageID #290).

Each email included Mr. Koutrodimos's signature block, which reads, "As your Relationship Manager, I commit to make banking easy for you by delivering exceptional service." (ECF No. 7-4, PageID #276; ECF No. 7-5, PageID #278–83; ECF No. 7-6, PageID #285–88; ECF No. 7-7, PageID #290.)

In that litigation, the plaintiffs deposed Mr. Koutrodimos "for the limited purpose of trying to ascertain what happened to the funds that had been purportedly invested in Epitome." (ECF No. 7-1, ¶ 13, PageID #215.)  In his deposition,

4

Mr. Koutrodimos repeatedly testified that he could not remember any involvement with Epitome Investment Fund or Antonas.  (ECF No. 1-1, PageID #63, #72–73, #102 & #106.)  Based on this record, Plaintiffs maintain that Mr. Koutrodimos "was indeed Antonas's Relationship Manager" at PNC.  (ECF No. 7, PageID #202.)

### C.  Defendants' Proffered Evidence

In support of removal, Defendants provide additional evidence.  In a declaration, Mr. Koutrodimos states that while at PNC he never had any role or responsibility with business accounts and was "exclusively" responsible for personal accounts.  (ECF No. 1-1, ¶¶ 4 & 5, PageID #15.)  According to his declaration, Mr. Koutrodimos was "never a Relationship Manager" for Antonas, and he did not know whether Antonas had an assigned Relationship Manager at PNC.  (*Id.*, ¶¶ 8–9, PageID #16.)  To support this statement, Mr. Koutrodimos relies on his deposition testimony.  (*Id.*, ¶ 9.)  When asked whether he was the relationship manager at PNC for Antonas, Mr. Koutrodimos flatly testified:  "I was not."  (*Id.*, PageID #96.)  Consistent with his testimony, Mr. Koutrodimos declares that he had no oversight of Antonas's business or personal accounts, and the two men had no professional relationship.  (*Id.*, ¶¶ 11–12, PageID #16.)  His professional relationship extended only to "endeavor[ing] to direct Mr. Antonas to an appropriate contact at the bank, like [he] would with any other customer."  (*Id.*, ¶ 13, PageID #17.)  While Mr. Koutrodimos and Antonas were members of the same church, they "did not have a close personal relationship."  (*Id.*, ¶ 14.)  Mr. Koutrodimos explained that the relationship manager text in his signature block was "automatically appended to every email" he sent.  (*Id.*, ¶ 9, PageID #16.)

5

Further, Mr. Koutrodimos's declaration aligns with his deposition testimony from the State court litigation.  (ECF No. 1-1, PageID #22–144.)  Mr. Koutrodimos testified that he knew Epitome Investment Fund was an investment business but did not know any specifics about it.  (*Id.*, PageID #57.)  Mr. Koutrodimos "knew of" Antonas, and if he needed help at the bank, Mr. Koutrodimos would "point him in the right direction."  (*Id.*, PageID #70–71.)  But at no time did Mr. Koutrodimos oversee any of Antonas's accounts or approve any wire transfers or other transactions.  (*Id.*, PageID #55, 102, & 106.)  In short, the gist of the testimony of Mr. Koutrodimos was that, though he was aware of Antonas both in the community and at the bank, the two men did not deal closely with one another personally or professionally.

Defendants also filed the declaration of Steven Pollander, a senior vice president at PNC.  (ECF No. 8.)  Pollander stated that the title of "Relationship Manager" is an "official title and function at PNC."  (*Id.*, ¶ 3, PageID #393.)  Pollander reviewed PNC's records and determined that Mr. Koutrodimos was never assigned as a Relationship Manager to any of Antonas's accounts at PNC.  (*Id.*, ¶¶ 5–7, PageID #394.)  Additionally, Mr. Koutrodimos did not open any accounts on behalf of Antonas.  (*Id.*, ¶ 8.)  Mr. Koutrodimos was not "required to approve" account transactions for Epitome Investment Fund or any of Antonas's other accounts—transactions for business and personal accounts can be processed by any PNC employee with the authority to do so.  (*Id.*, ¶ 9.)

## STATEMENT OF THE CASE

As alleged in the complaint, the individual Plaintiffs reside in Ohio, Massachusetts, and Florida.  (ECF No. 1-2, ¶¶ 2–22, PageID #149–51.)  Among Plaintiffs are some limited liability companies and one corporation incorporated in Ohio with its principal place of business in Ohio.  The complaint does not identify the citizenship of the principals of two limited liability companies, Carl Goudas and Enzo Fatigati.  (*Id.*, ¶¶ 14 & 22, PageID #150 & #151.)  Ordinarily, such an omission would be fatal to establishing federal jurisdiction.  It is not here for three reasons.  First, publicly available information demonstrates that the principals of these two limited liability companies are citizens of Ohio.  Second, even as they attempt to avoid federal jurisdiction, Plaintiffs do not contend that these individuals are not Ohio residents.  Third, a central allegation of the complaint turns on the relationships between Plaintiffs and Mr. Koutrodimos in the Greek community in Northeast Ohio, providing sufficient guarantee that all Plaintiffs, including the members or principals of the limited liability companies bringing suit, are residents and citizens of Ohio.

Defendant PNC is a national bank and financial services company with its principal place of business in Pennsylvania.  (*Id.*, ¶ 23, PageID #151.)  Defendant Demetrios Koutrodimos is a resident of Ohio.  (ECF No. 1-2, ¶ 24, PageID #151; ECF No. 1, ¶ 7, PageID #4.)  Unidentified defendants are not considered when determining diversity of citizenship.  *See Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 948 (6th Cir. 1994).  Therefore, the Court disregards the Doe Defendants for purposes of determining jurisdiction.

7

Plaintiffs allege that Mr. Koutrodimos knew of Antonas's fraudulent activities at PNC and approved wire transfers that caused more than $20 million in damages. (ECF No. 1-2, ¶¶ 60–66 & 110, PageID #158–59 & 164.)  Plaintiffs bring six State-law claims and none under federal law:  violation of the Uniform Fiduciaries Act (Count I); negligence (Count II); fraud (Count III); aiding and abetting tortious conduct (Count IV); civil liability for criminal conduct (Count V); and civil conspiracy (Count VI).  (ECF No. 1-2, PageID #159–66.)

Because Mr. Koutrodimos is an Ohio resident, like Plaintiffs, Defendants acknowledge that there is not complete diversity of citizenship.  (ECF No. 1, ¶¶ 11–12, PageID #5.)  Nonetheless, Defendants maintain that removal and the exercise of federal jurisdiction are appropriate based on Plaintiffs' fraudulent joinder of Mr. Koutrodimos.  (*Id.*, ¶ 27, PageID #9.)

## ANALYSIS

Under the law of this Circuit, fraudulent joinder of non-diverse defendants will not defeat removal based on diversity.  *See Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994).  Fraudulent joinder occurs where a complaint names a party against which there is no colorable cause of action.  *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 951 (6th Cir. 2011) (citation omitted).  This standard requires the absence of a reasonable basis in law or fact for the claims asserted:

> There can be no fraudulent joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law . . . . One or the other at least would be required before it could be said that there was no real intention to get a joint judgment, and that there was no colorable ground for so claiming.

8

*Alexander*, 13 F.3d at 949 (quoting *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 176 (5th Cir. 1968)); *see also Walker*, 443 F. App'x at 951.

The removing party bears the burden of proving fraudulent joinder with particularity supported by clear and convincing evidence. *Alexander*, 13 F.3d at 949; *Walker*, 443 F. App'x at 955 n.7. A defendant may present evidence and not merely rely on the allegations of the complaint. *See Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012); *King v. Centerpulse Orthopedics, Inc.*, No. 1:05-CV-1318, 2006 WL 456478, at *1 (N.D. Ohio Feb. 24, 2006).

Where a defendant presents evidence to support an argument of fraudulent joinder, courts in this Circuit employ a procedure akin to proceedings on a motion for summary judgment to determine whether discrete facts preclude a basis for recovery against the in-State defendants. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007); *Walker*, 443 F. App'x at 952–53 (discussing *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 573–74 (5th Cir. 2004) (en banc)). Because fraudulent joinder arguments arise early in litigation, a summary inquiry limits the evidentiary procedure outlined to identifying "discrete and undisputed facts." *Smallwood*, 385 F.3d at 573. Additionally, courts consider "unchallenged factual allegations." *Walker*, 443 F. App'x at 953 (quoting *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003)). Alternatively, a court may analyze fraudulent joinder based on the pleadings, construing them in favor of the plaintiff as it would on a motion to dismiss. *Smallwood*, 385 F.3d at 573.

Consistent with resolving doubts in favor of remand, however, the Court must give Plaintiffs the benefit of the doubt on all disputes of fact and any ambiguities in the controlling State law. *Coyne ex rel. Ohio v. American Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). Moreover, Plaintiffs' motive for joining a non-diverse party has no bearing on the analysis. *Jerome-Duncan, Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999). For these reasons, the burden of demonstrating fraudulent joinder "is indeed a heavy one." *King*, 2006 WL 456478, at *2 (quoting *Fields v. Reichenberg*, 643 F. Supp. 777, 779 (N.D. Ill. 1986)).

In Plaintiffs' complaint, Mr. Koutrodimos is mentioned in four of the six counts: fraud (Count III), aiding and abetting tortious conduct (Count IV), civil liability for criminal act (Count V), and civil conspiracy (Count VI). Defendants support their claim of fraudulent joinder by raising an affirmative defense of immunity under the Ohio Uniform Fiduciaries Act and by arguing that Plaintiffs fail to allege colorable claims against Mr. Koutrodimos, especially in light of the evidence in the record.

## I.     Ohio Uniform Fiduciaries Act

As an initial matter, Defendants argue that Plaintiffs "plead no colorable claims" against Mr. Koutrodimos because the Ohio Uniform Fiduciary Act immunizes banks and bank employees from liability unless "'actual knowledge' or knowledge of facts tantamount to bad faith can be pled and proved." (ECF No. 9, PageID #398 & #405–06 (citing Ohio Rev. Code § 5815.01 *et seq*).) In response, Plaintiffs assert that the "factual determinations" necessary to determine whether this immunity applies are "unequivocally improper at this stage and ignore the Court's proper inquiry" on a motion to remand. (ECF No. 12, PageID #425.)

10

Immunity under the Ohio Uniform Fiduciary Act is an affirmative defense. *Estate of Barney v. PNC Bank, Nat'l Ass'n*, 714 F.3d 920, 925 (6th Cir. 2013).  While a court can grant a motion to dismiss where the undisputed facts "conclusively establish" an affirmative defense, *Hensley Mfg. v. ProPride Inc.*, 579 F.3d 603, 613 (6th Cir. 2009), an inquiry into fraudulent joinder "must be directed toward the joinder, not the merits of the action as an entirety," *Freitas v. McKesson Corp. (In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.)*, 889 F. Supp. 2d 931, 938 (E.D. Ky. 2012) (quotation omitted).  "[I]f a plaintiff's claims against diverse and non-diverse defendants suffer from the same alleged flaw," meaning that all claims are susceptible to an affirmative defense, "that indicates not fraudulent intent in the non-diverse defendant's joinder, but rather a problem with the plaintiff's case overall." *See id.* (discussing *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 113 (3d Cir. 1990)).  In that scenario, a merits determination is more appropriately left to the State court.

Here, determining whether immunity under Ohio's Uniform Fiduciary Act applies would require the Court to "step[] [outside] the threshold jurisdictional issue" and into the merits of Plaintiffs' claims against all Defendants.  *See Boyer*, 913 F.2d at 112.  Because resolving Defendants' argument regarding the Act is intertwined with the merits of Plaintiffs' claims, it is not a proper basis in this case for determining fraudulent joinder.

## II.   Colorable Claims

Applying the law of this Circuit, the Court turns to assessing the sufficiency of the claims against Mr. Koutrodimos on the face of the complaint and the evidence that the parties proffer.  *See Coyne*, 183 F.3d at 493.  Defendants argue that

11

"Plaintiffs failed to state any colorable claim against Mr. Koutrodimos" and that "he should be dismissed from this litigation and his presence disregarded for jurisdictional purposes."  (ECF No. 9, PageID #407.)

### II.A.  Fraud

In Count III, Plaintiffs bring a claim for common-law fraud against Mr. Koutrodimos.  In Ohio, the party asserting fraud must establish six elements: (1) a representation or, where there is a duty to disclose, a concealment of fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the representation (by the other party); and (6) an injury proximately caused by that reliance.  *Williams v. Aetna Fin. Co.*, 83 Ohio St. 3d 464, 475, 1998-Ohio-294, 700 N.E.2d 859, 868 (1998).

### II.A.1. Pleading Deficiencies

Under both federal and Ohio law, stating a claim for fraud requires meeting a heightened standard of pleading with particularity.  Fed. R. Civ. P. 9(b); Ohio Civ. R. 9(B); *see also Aluminum Line Prods. Co. v. Brad Smith Roofing Co.*, 109 Ohio App. 3d 246, 671 N.E.2d 1343, 1351 (1996) (stating that, to satisfy Ohio Rule 9(B), the complaint must "include the time, place and content of the false representation").  In the fraudulent joinder context, fraud claims pled without the requisite particularity are defective and cannot serve as the basis for remand.  *See, e.g.*, *Larue v. Mortgage Elec. Registration Sys.*, No. 1:12-cv-68, 2012 WL 3886876, at *3 (W.D. Mich. Sept. 6, 2012); *Miller v. Reminger Co., LPA*, No. 3:11-cv-315, 2012 WL 529822, at *3 (W.D. Ky. Feb. 17, 2012).  More generally, conclusory allegations that are insufficient to

state a claim against the nondiverse defendant under State law also fail to overcome a claim of fraudulent joinder. *Miner v. Hirschbach Motor Lines, Inc.*, No. 1:05-cv-0703, 2005 WL 1377875, at *1 (N.D. Ohio June 7, 2005) (citing *Badon v. RJR Nabisco Inc.*, 224 F.3d 382, 392–93 (5th Cir. 2000)); *Walker*, 443 F. App'x at 952–56 (noting that the factual insufficiency of a plaintiff's claim may be a basis for removal based on fraudulent joinder).

Here, the complaint does not allege that Mr. Koutrodimos committed fraud against Plaintiffs with the requisite particularity.  Plaintiffs do not identify any specific transactions, dates, false statements, or concealments involving Mr. Koutrodimos.  Instead, the complaint contains only conclusory allegations that he was engaged in "fraudulent activities to misappropriate investor funds" and was "required to approve" all transactions.  (ECF No. 1-2, ¶¶ 61 & 106, PageID #158 & #163.)  Plaintiffs allege that Antonas lost money "apparently through incompetence or another unknown motive."  (ECF No. 1-2, ¶ 47, PageID #156.)  If Antonas was an incompetent investor, it is unclear how Plaintiffs could recover from Mr. Koutrodimos for fraud without specific allegations of his misconduct.  On the other hand, if Antonas had an "unknown motive" to lose the funds, this vague accusation does not attach any particular unlawful or fraudulent intent to Mr. Koutrodimos.

Plaintiffs' allegations are also conclusory and grounded in conjecture. Even taking as true that Plaintiffs lost upwards of $20 million because of Antonas's allegedly unlawful conduct—Plaintiffs infer that because Mr. Koutrodimos knew Antonas personally, was a member of the Northeast Ohio Greek community, and was

13

employed at PNC that, he *must* have been involved in the fraudulent scheme. Plaintiffs' attempt to accuse Mr. Koutrodimos of "affinity fraud" underscores this point.  (ECF No. 7, PageID #202.)  Plaintiffs cannot assume fraudulent intent or other misconduct from a series of inferences and engage in a formulaic recitation of the elements of fraud to state a colorable claim against Mr. Koutrodimos—especially where Plaintiffs have failed to plead the existence of a particular fraudulent scheme in the most general sense.  Ohio law demands more.  "Fraudulent conduct cannot be established by mere conjecture."  *Malek*, 2020-Ohio-3330, at ¶ 32; *Avery v. Rossford, Ohio Transp. Improvement Dist.*, 145 Ohio App. 3d 155, 165, 762 N.E.2d 388, 395 (2001) (noting that fraud claims based on conclusory allegations not supported by material facts are insufficient to state a claim).

In some circumstances, Ohio courts do not apply Ohio Rule 9(B) strictly where the defendant otherwise has general knowledge of the particulars of the fraud.  Even then, they require meeting the heightened pleading standard.  *See F & J Roofing Co. v. McGinley & Sons, Inc.*, 35 Ohio App. 3d 16, 17–18, 518 N.E.2d 1218, 1220 (1987) (holding that the fraud allegations were specific enough when the complaint stated the "time, place, and content of the false representation").  Here, Plaintiffs' fraud claim fails to put Mr. Koutrodimos on sufficient notice to "prepare an effective response and defense."  *Id.* (citing *In re Commonwealth Oil/Tesoro Petroleum Corp. Secs. Litig.*, 467 F. Supp. 227, 250 (W.D. Tex. 1979)).  Therefore, Plaintiffs' allegations of fraud against Mr. Koutrodimos do not support remand.

14

### II.A.2. Summary Inquiry

Beyond the pleadings, both parties proffer evidence to support their positions. When undertaking a summary inquiry to consider evidence beyond the pleadings, the Court is not concerned with whether Plaintiffs have evidentiary support for the merits of their claims. *Walker*, 443 F. App'x at 956. Instead, a summary inquiry does not involve a court in resolving factual disputes. *Id.* at 955. Nor does the court wade into which party's "self-serving and conclusory affidavit[s] are truthful and accurate." *Id.* at 956. Mindful of the current procedural posture, Plaintiffs' failure to plead fraud with particularity does not necessarily foreclose the possibility that they might nonetheless be able to state a claim for fraud, making Mr. Koutrodimos's joinder proper.

However, this possibility does not mean that the Court must blindly accept Plaintiffs' versions of the facts where they are contrary to the overwhelming weight of the evidence. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921). And remand is not required simply because some facts may be said to be in dispute. *See id.* at 98.

Plaintiffs justify Mr. Koutrodimos's joinder in part on the allegation that he was Antonas's relationship manager at PNC. (ECF No. 7, PageID #198–99.) To support this allegation, Plaintiffs proffer emails from Mr. Koutrodimos's work account, which include the phrase "As your Relationship Manager, I commit to make banking easy for you by delivering exceptional service" in the signature block. (ECF No. 7, PageID #203.)

In response, Defendants point to the testimony and declaration of Mr. Koutrodimos and the declaration of Pollander, indicating that Mr. Koutrodimos was never Antonas's relationship manager.  (ECF No. 9, PageID #401.)  Defendants also point to Plaintiffs' exhibits which show that Mr. Koutrodimos's email signature block was included in all correspondence, even in internal correspondence between Mr. Koutrodimos and other PNC employees.  (ECF No. 9, PageID #401 (citing ECF No. 7-5, PageID #278).)  Rather than dispute that Mr. Koutrodimos did not serve as Antonas's relationship manager, Plaintiffs simply ignore it and plead to the contrary.

Plaintiffs do not dispute that Mr. Koutrodimos used that email signature block in correspondence with individuals who were not his clients.  Instead, they argue— in a footnote—that this statement "conveys a false business relationship to every recipient." (ECF No. 7, PageID #203 n.10.)  Assuming this argument is not waived, *see Buddenberg v. Estate of Weisdack*, __ F. Supp. 3d __, 2024 WL 159001, at *60 (N.D. Ohio Jan. 16, 2024), Plaintiffs do not develop it further.  There is no allegation that Antonas treated Mr. Koutrodimos as his relationship manager nor is there any other evidence tying Mr. Koutrodimos to any specific fraudulent transaction.  Plaintiffs cannot infer that Mr. Koutrodimos was Antonas's relationship manager from the email signature block—especially when they knew that Mr. Koutrodimos's role at PNC was limited to personal, and not business, accounts.  (ECF No. 1-1, PageID #71.)  Therefore, Plaintiffs cannot use the email signature block to create a dispute of fact and defeat Defendants' claim of fraudulent joinder.

16

Plaintiffs' other evidence justifying joinder includes emails that Mr. Koutrodimos sent to Antonas or on behalf of Antonas. Again, there is no allegation that these emails contained misrepresentations, nor do they tie Mr. Koutrodimos to any particular fraudulent transaction. At most, as Mr. Koutrodimos described it, he "point[ed] [Antonas] in the right direction at the bank," but had no role in the day-to-day managing of his accounts. (*Id.*) Without more, these emails do not create a dispute of fact regarding the limited nature of Mr. Koutrodimos's business relationship with Antonas.

Finally, Plaintiffs justify joinder by alleging that Mr. Koutrodimos was "required to prove" Antonas's transactions at PNC. (ECF No. 7, PageID #200.) Plaintiffs provide a list of Antonas's supposedly "suspicious" activities (*id.*) but make no concrete allegation (nor offer any evidence) that ties Mr. Koutrodimos to those activities (or that Mr. Koutrodimos approved them). Indeed, Defendants' deposition testimony and declarations—that Mr. Koutrodimos was never required to approve any of Antonas's transactions (ECF No. 1-1, ¶ 22, PageID #19) and that Mr. Koutrodimos did not assist Antonas with any specific fraudulent transaction (*id.*, ¶ 23, PageID #19–20; ECF No. 8, ¶ 9, PageID #394)—rebut Plaintiffs' allegations. Employees other than Mr. Koutrodimos opened and maintained all of Antonas's PNC accounts. (ECF No. 8, ¶¶ 4–8, PageID #394.)

Plaintiffs' attempts to create disputes of fact based on their pleadings are unavailing, rebutted by the overwhelming weight of the evidence, and do not support remand. *Wilson*, 257 U.S. at 97–98. Defendants have met their burden to

17

demonstrate that Plaintiffs cannot maintain a colorable claim of fraud against Mr. Koutrodimos in this summary inquiry.

### II.A.3. Possibility of Amendment

Despite Plaintiffs' pleading deficiencies and Defendants' evidence supporting its claim for fraudulent joinder, a few courts in the fraudulent joinder context deem defective fraud claims to have a "glimmer of hope" because, after remand, the State court might grant leave to amend the complaint. *Murriel-Don Coal Co. v. Aspen Ins. UK Ltd.*, 790 F. Supp. 2d 590, 597 (E.D. Ky. 2011); *Jones v. Life Ins. Co. of Georgia*, 336 F. Supp. 2d 631, 636 (S.D. Miss. 2004) (denying fraudulent joinder because the "[p]laintiff may simply amend her complaint to plead her [fraud] claims more specifically").

But Mr. Koutrodimos need not "negate any possible theory that [Plaintiffs] might allege in the future:  only [the] present allegations count." *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 74 (7th Cir. 1992).  Moreover, after discovery and deposition testimony in the other State case and the opportunity to present evidence in resolving this motion, Plaintiffs do not possess the facts necessary to plead fraud against Mr. Koutrodimos under the State or federal heightened standard.  If they did, those facts would be before the Court.  When Plaintiffs drafted their complaint, they failed to set forth any specific factual allegations to state a claim for fraud against Mr. Koutrodimos.  There is "no better admission of fraudulent joinder." *Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F. Supp. 1213, 1221 (S.D. Ala. 1998).

18

## II.B.   Aiding and Abetting Fraud

In Count IV, Plaintiffs bring a claim for aiding and abetting tortious conduct. As Plaintiffs admit in their complaint, the Ohio Supreme Court has not yet recognized a cause of action for aiding and abetting fraud.  (ECF No. 1-2, ¶ 117, PageID #165.) In answering a certified question from the Northern District, the Ohio Supreme Court held that it has "never recognized a claim" for aiding and abetting tortious conduct. *DeVries Dairy, LLC v. White Eagle Coop. Assn., Inc.*, 132 Ohio St.3d 516, 2012-Ohio-3828, 974 N.E.2d 1194, ¶ 2 (2012).

Based on the holding in *DeVries*, Ohio and federal courts have consistently concluded that "Ohio does not recognize a cause of action for aiding and abetting a tortious act." *Spaude v. Mysyk*, 2017 WL 9485666, at *13 (N.D. Ohio July 14, 2017) (collecting Ohio and federal cases).  Therefore, Plaintiffs cannot maintain a colorable claim against Mr. Koutrodimos for aiding and abetting tortious conduct as a matter of law.

## II.C.   Civil Liability for Criminal Acts

Section 2307.60 of the Ohio Revised Code provides that "[a]nyone injured in person or property by a criminal act" can "recover full damages in[] a civil action," including attorneys' fees and costs.  Ohio Rev. Code § 2307.60(A)(1).  No criminal conviction is necessary for liability under this statute.  *See Buddenberg v. Weisdack*, 161 Ohio St. 3d 160, 2020-Ohio-3832, 161 N.E.3d 603, ¶ 11.  Plaintiffs allege that Antonas and Epitome Investment Fund committed the criminal act of theft by deception in violation of Section 2913.02(A)(3) and that Mr. Koutrodimos aided and abetted this criminal act in violation of Section 2923.03(A)(2).

19

Section 2913.02(A)(3) provides that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services . . . [b]y deception." Theft by deception requires a finding of knowing intent on the part of the accused to deceive and gain control over property to which it is not entitled. *Taylor Excavating, Inc. v. Abele Tractor & Equip. Co.*, No. 3:09CV268, 2012 WL 12894224, at *7 (N.D. Ohio Feb. 10, 2012). This offense "necessarily requires some fraudulent conduct." *State v. Jacobozzi*, 6 Ohio St. 3d 59, 63, 451 N.E.2d 744, 748 (1983).

Plaintiffs attempt to reframe their fraud case under the broad heading of a claim of civil liability for criminal acts. On this count, Plaintiffs' pleadings go something like this: Antonas and PNC committed fraud (stole their money through deception) and Mr. Koutrodimos assisted that conduct. But the Ohio Supreme Court attaches liability only if the person would be liable as an active wrongdoer for fraud, nor merely as an aider or abettor. *DeVries Dairy*, 2012 Ohio-3828, at ¶¶ 1–2. For the same reasons the Court determined that Plaintiffs cannot maintain a fraud claim against Mr. Koutrodimos or for aiding and abetting fraud, there can be no colorable claim against him for aiding and abetting theft by deception.

### II.D.  Civil Conspiracy

The Ohio Supreme Court defines civil conspiracy as a "malicious combination of two or more persons to injure another person or property, in a way not competent for one alone, resulting in actual damages." *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St. 3d 415, 419, 1995-Ohio-61, 650 N.E.2d 863 (1995). "A civil conspiracy claim is derivative and cannot be maintained absent" an unlawful act that is

actionable without the conspiracy. *Morrow v. Reminger & Reminger Co. LPA*, 2009-Ohio-2665, 915 N.E.2d 696, ¶ 21 (Ohio Ct. App. 2009); *Dickerson Internationale, Inc. v. Klockner*, 139 Ohio App. 3d 371, 380, 743 N.E.2d 984 (Ohio Ct. App. 2000). Here, Plaintiffs' civil conspiracy claim is based, in part, on the fraud that Mr. Koutrodimos allegedly committed. Without a viable fraud claim, however, Plaintiffs' derivative claim of civil conspiracy also fails, even without considering the intra-corporate conspiracy doctrine. *See Coley v. Lucas Cnty*, No. 3:09-cv-8, 2014 WL 272667, at *9 (N.D. Ohio Jan. 23, 2014).

*     *     *

Because there is no possibility that Plaintiffs can maintain a claim against Mr. Koutrodimos, the Court finds that his joinder is fraudulent, intended to defeat federal jurisdiction. Mr. Koutrodimos was merely an employee of PNC who happened to know Antonas and share certain affiliations with him. But the record demonstrates that he was not involved in the conduct of Anotonas and did not commit any fraud against Plaintiffs. Where parties are fraudulently joined, they are dismissed from the lawsuit. *See West v. Visteon Corp.*, 367 F. Supp. 2d 1160, 1165 (N.D. Ohio 2005).

Therefore, the Court disregards Mr. Koutrodimos's citizenship when assessing whether complete diversity exists. *Coyne*, 183 F.3d at 493. It is undisputed that Plaintiffs and PNC Bank are completely diverse and that the amount in controversy stratifies the requirements of 28 U.S.C. § 1332(a)(1). Accordingly, the Court **DISMISSES** Mr. Koutrodimos from this lawsuit and **DENIES** Plaintiffs' motion to remand.

## II.     Fees and Costs

Both parties request reimbursement for the fees and costs associated with removal and briefing Plaintiffs' motion to remand.  Plaintiffs request fees and costs associated with Defendants' removal attempt under 28 U.S.C. § 1447(c).  (ECF No. 7, PageID #210.)  Because the Court denies Plaintiffs' motion to remand, Plaintiffs are not entitled to recover their fees and costs.  *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005) (recognizing that courts should deny any award of fees where an "objectively reasonable basis" for removal exists).

Defendants request that the Court exercise its inherent authority to award them fees and costs because Plaintiffs knew or should have known that "their core factual allegations against Mr. Koutrodimos were not true."  (ECF No. 9, PageID #408.)  Courts have "inherent authority to award fees when a party litigates in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Big Tank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997) (quotation omitted).  Ordinarily, however, the Court should consider "whether the conduct could also be sanctioned under the statute or the Rules rather than [its] inherent power."  *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991)).

Defendants do not make a motion under Rule 11 for sanctions.  While that type of motion is not required *per se*, Rule 11 applies to all "pleadings and papers."  *First Bank of Marietta*, 307 F.3d at 515–17.  In contrast, sanctions under inherent authority "extend[] through the proceedings," beyond sanctionable conduct under the Rules.  *Id.* at 517.  Given the early stage of these proceedings, Defendants have not

made the necessary showing that Plaintiffs prolonged the proceedings or engaged in misconduct to warrant awarding fees.  Indeed, Plaintiffs crafted their pleadings to engage in the time-honored practice of forum shopping.  Nothing more.

## CONCLUSION

For the foregoing reasons, the Court determines that Plaintiffs fraudulently joined Defendant Demetrios Koutrodimos and **DISMISSES** him from this lawsuit. Further, the Court **DENIES** Plaintiffs' motion to remand (ECF No. 7).

**SO ORDERED.**

Dated: July 8, 2024

_____
     J. Philip Calabrese
     United States District Judge
     Northern District of Ohio