# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE VOUTSIOTIS, et al. | ) | Case No. 5:23-cv-2305 |
| | ) | |
| Plaintiffs, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | James E. Grimes, Jr. |
| PNC BANK, NATIONAL | ) | |
| ASSOCIATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

Investors whose fiduciary lost their funds through an allegedly fraudulent scheme bring an action against the bank where the fiduciary maintained an account for and transacted the invested funds.  Plaintiffs bring claims for violation of the Ohio Uniform Fiduciary Act, negligence, fraud, aiding and abetting tortious conduct, civil damages for a criminal act, and civil conspiracy.  Defendant PNC Bank moves to dismiss.  For the following reasons, the Court **GRANTS** the motion.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 8, 2013, Constantine Antonas registered Antonas Capital Management, LLC.  (ECF No. 18, ¶ 41, PageID #482.)  Nine days later, Antonas and Antonas Capital Management created Epitome Investment Fund, LP.  (*Id.*, ¶ 42, PageID #482.)  Antonas shared a private placement memorandum for Epitome Investment Fund with Plaintiffs, who are all members of the Northeast Ohio Greek community.  (*Id.*, ¶¶ 43–44, PageID #482.)  The memorandum stated that the

primary objective of Epitome Investment Fund was to "achieve high risk-adjusted returns by utilizing holistic proprietary research while seeking to limit volatility and downside risk through opportunistic portfolio construction and strong risk management." (*Id.*, ¶ 44, PageID #482–83.)

The amended complaint alleges that Antonas lacked experience in investment advising.  (*Id.*, ¶ 55, PageID #484.)  Nevertheless, Antonas held himself out as an investment adviser to members of the Northeast Ohio Greek Orthodox community. (*Id.*, ¶ 43, PageID #482.)  One member of this community, Demetrios Koutrodimos, was friendly with Antonas.   (*Id.*, ¶ 45, PageID #483.)   At the relevant times, Koutrodimos was Antonas's relationship manager at Defendant PNC Bank.  (*Id.*, ¶¶ 25 & 52, PageID #477 & #483.)  Koutrodimos allegedly knew that Antonas lacked experience in investment advising.  (*Id.*, ¶ 55, PageID #484.)

With the assistance of PNC Bank employees including Koutrodimos, Antonas opened an account for Epitome Investment Fund to receive funds from investors, an account for Antonas Capital Management, and three personal accounts at PNC Bank. (*Id.*, ¶¶ 47–48, PageID #483.)  To invest funds deposited in the Epitome Investment Fund bank account, Antonas created an account for Epitome Investment Fund on a third-party brokerage platform.  (*Id.*, ¶ 49, PageID #483.)

According to the amended complaint, Antonas executed a fraudulent scheme using those accounts.  Investors sent funds by check or wire transfer to the Epitome Investment Fund account at PNC Bank.  (*Id.*, ¶ 50, PageID #483.)  Then, Antonas wired funds from that account to the account on the third-party brokerage platform.

(*Id.*)  "[A]pparently through incompetence or another unknown motive," Antonas lost most of the invested funds.  (*Id.*)  To hide the losses from investors, Antonas created false brokerage account statements.  (*Id.*, ¶ 51, PageID #483.)

As a part of this scheme, Antonas engaged in transactions such as wire transfers to entities unrelated to Epitome Investment Fund's business, wire transfers through Canadian intermediary banks, diversion of Epitome Investment Fund funds to non-investors using cashier checks, and transfers of large sums into Antonas's own personal accounts.  (*Id.*, ¶ 60, PageID #485–86.)  These transactions required approval from Koutrodimos or other PNC Bank employees.  (*Id.*, ¶¶ 63–65, PageID #486.)

Antonas is now deceased.  (*Id.*, ¶ 1, PageID #475.)  On October 27, 2023, Plaintiffs filed a complaint against PNC Bank, Koutrodimos, and several unidentified "Doe" defendants in State court.  (ECF No. 1-2, PageID #148.)  Defendants removed the case, arguing that Plaintiffs fraudulently joined Koutrodimos to avoid diversity jurisdiction.  (ECF No. 1, ¶¶ 13–27, PageID #5–9.)  In support of removal, Defendants submitted an affidavit from Koutrodimos in which he states that he did not act as Antonas's relationship manager.  (ECF No. 1-1, ¶¶ 8–10, PageID #16.)  Also, the affidavit states that Koutrodimos did not oversee any of Antonas's accounts and never held any role or responsibilities relating to any business accounts.  (*Id.*, ¶ 11, PageID #16.)

Plaintiffs moved to remand.  (ECF No. 7.)  On July 8, 2024, the Court denied Plaintiffs' motion to remand and dismissed Koutrodimos from the suit as fraudulently

joined.  (ECF No. 13.)  Then, Plaintiffs filed an amended complaint.  (ECF No. 18.)
Defendant PNC Bank moves to dismiss for failure to state a claim.  (ECF No. 19.)

## ANALYSIS

In any civil action, a complaint must "state[] a claim for relief that is plausible,
when measured against the elements" of a claim. *Darby v. Childvine, Inc.*, 964 F.3d
440, 444 (6th Cir. 2020) (citing *Binno v. American Bar Ass'n*, 826 F.3d 338, 345–46 (6th
Cir. 2016)).  A complaint must "contain sufficient factual matter, accepted as true, to
'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,
678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is
plausible "when the plaintiff pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at
678 (citing *Twombly*, 550 U.S. at 556).  To survive a motion to dismiss, a complaint
must "raise a right to relief above the speculative level" into the "realm of plausible
liability." *Twombly*, 550 U.S. at 555, 557 n.5.

When analyzing a complaint under this standard, the Court construes factual
allegations in the light most favorable to the plaintiff, accepts them as true, and
draws all reasonable inferences in the plaintiff's favor. *Wilburn v. United States*, 616
F. App'x 848, 852 (6th Cir. 2015).  But a pleading must offer more than mere "labels
and conclusions," because "a formulaic recitation of the elements of a cause of action
will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Nor is a
court required to accept "[c]onclusory allegations or legal conclusions masquerading

4

as factual allegations[.]"  *Eidson v. Tennessee Dep't of Child.'s Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

Therefore, the Court must distinguish between "well-pled factual allegations," which must be treated as true, and "naked assertions," which need not be.  *See Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (cleaned up); *see also, e.g.*, *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 375 (6th Cir. 2011) (determining that because some of the plaintiff's factual allegations were "not well-pleaded[,]" their conclusory nature "disentitles them to the presumption of truth") (quotation omitted). Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678–79.

## I.  The Ohio Uniform Fiduciary Act

Defendant argues that the Ohio Uniform Fiduciary Act provides an affirmative defense that mandates the dismissal of all claims in this case.  (ECF No. 19-1, PageID #509–12.)  Plaintiffs contend that the defense does not apply here.  (ECF No. 22, PageID #563–64.)

Under the Ohio Uniform Fiduciary Act, a bank is not liable to a principal for the fiduciary's fraudulent transactions unless the bank had "actual knowledge that the fiduciary is committing a breach of obligation as a fiduciary" or "knowledge of such facts that its action . . . amounts to bad faith."  Ohio Rev. Code §§ 5815.06 & 5815.08.  The Act seeks "to facilitate commercial transactions, by relieving those who deal with authorized fiduciaries from the duty of ensuring that entrusted funds are properly utilized for the benefit of the principal by the fiduciary."  *Master Chem. Corp.*

5

*v. Inkrott*, 55 Ohio St. 3d 23, 26, 563 N.E.2d 26 (1990).  The Act provides an affirmative defense that "shields a bank from liability when the bank knows that [a fiduciary] is acting for the benefit of another" and the fiduciary "possessed the authority to conduct the transaction in question." *Inkrott*, 55 Ohio St. 3d 23 at 27; *see also Barney v. PNC Bank, N.A. (In re Estate of Barney)*, 714 F.3d 920, 927 (6th Cir. 2013) (observing that the Act effectively "assigns[s] the risk that a fiduciary might defraud a principal to the principal instead of to a third party (like a bank)").

Plaintiffs do not dispute that the Ohio Uniform Fiduciary Act governs this controversy.  (ECF No. 18, ¶¶ 70–93, PageID #487–89.)  Instead, they argue that Defendant had either actual knowledge of fraud or such knowledge that its processing of Antonas's transactions constituted bad faith.  (ECF No. 22, PageID #563–64.)

## I.A.    Actual Knowledge

For purposes of the Ohio Uniform Fiduciary Act, "actual knowledge" means an "awareness at the moment of the transaction that the fiduciary is defrauding the principal." *Inkrott*, 55 Ohio St. 3d at 28.  This awareness requires knowledge of express facts demonstrating that the funds are being used in violation of the fiduciary relationship.  *Id.* (citing *General Ins. Co. of America v. Commerce Bank of St. Charles*, 505 S.W.2d 454, 457 (Mo. Ct. App. 1974) (noting that "a bank may not be found to possess 'actual knowledge' of a breach of trust because at some stage of the handling of the fiduciary account it *could* . . . become aware of a breach of trust") (emphasis added)).  Based on this required level of actual knowledge that a fiduciary is committing fraud, the Ohio Supreme Court in *Inkrott* affirmed a jury verdict that a trust company which allowed an embezzler to deposit corporate tax checks into an

investment account had no liability. *Id.* at 28; *see also Sekerak v. National City Bank*, 342 F. Supp. 2d 701, 710–11 (N.D. Ohio 2004) (granting summary judgment where a bank was not informed of a fiduciary's limitations and the principal knew of and did not object to the transactions); *Pavlovich v. National City Bank*, 342 F. Supp. 2d 718, 729 (N.D. Ohio 2004), *aff'd,* 435 F.3d 560 (6th Cir. 2006) (same).

Here, the amended complaint contains a conclusory statement that PNC Bank had actual knowledge of Antonas's fraudulent scheme: "PNC had actual knowledge of these breaches of fiduciary duty." (ECF No. 18, ¶ 84, PageID #488.) Even after extensive discovery in related proceedings (ECF No. 13, PageID #431–33), there are no factual allegations supporting this conclusion, and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986). At most, Plaintiffs allege that PNC Bank should have known that some of Antonas's transactions were unusual or should have raised suspicion. (ECF No. 18, ¶ 86, PageID #488.) That allegation does not amount to "express factual information that the funds are being used for private purposes in violation of fiduciary relationship." *Inkrott*, 55 Ohio St. 3d at 28. The question here is not whether PNC Bank *could* or *should* have known of the fraudulent activity, but whether PNC Bank *actually knew* that the transactions were fraudulent when they occurred.

Also, the amended complaint alleges that unnamed employees of PNC Bank "had actual knowledge of the activities of Antonas," were "required to approve" Antonas's transactions, and knew of unusual circumstances surrounding them. (*Id.*,

¶¶ 63–68, PageID #486–87.)  These allegations suffer from the same defects.  Even attributing the allegations against these Doe Defendants to PNC Bank, the amended complaint still fails to supply express facts demonstrating that PNC Bank or its agents had "awareness at the moment of the transaction that [Antonas] was defrauding [his] principal[s]."  *Inkrott*, 55 Ohio St. 3d at 28.

"[T]o hold the Bank liable, [Plaintiffs] must have pleaded sufficient facts to allow the inference that the Bank had unambiguous factual information, at the moment that [Antonas] requested the wire transfers, that [Antonas] was using the funds for his own purposes in violation of the fiduciary relationship."  *In re Estate of Barney*, 714 F.3d at 928.  Because Plaintiffs did not do so, the Ohio Uniform Fiduciary Act provides a defense to Plaintiffs' claims as a matter of law.

### I.B.    Bad Faith

The Ohio Uniform Fiduciary Act does not define "bad faith" but does state that "'[g]ood faith' includes an act when it is in fact done honestly."  Ohio Rev. Code § 5815.04.  Applying the Act, Ohio courts find bad faith where a defendant exhibits dishonest purposes or self-interested motives.  *Inkrott*, 55 Ohio St. 3d at 28.  Courts consider whether it was "commercially unjustifiable for the [defendant] to disregard and refuse to learn facts readily available."  *Id.* (quoting *Appley v. West*, 832 F.2d 1021, 1031 (7th Cir. 1987)).  To show bad faith, "[t]he facts and circumstances must be so cogent and obvious that to remain passive would amount to a deliberate desire to evade knowledge because of a belief or fear that inquiry would disclose a defect in the transaction."  *Id.* (quoting *General Ins. Co.*, 505 S.W.2d at 458).

8

Bank policies that presume the correctness of corporate transfers might be "commercially unjustifiable" and an "attempt to contract away bad-faith liability." *Id*. However, treating financial instruments as bearer paper—that is, as payable to the possessor—"whether negligent or not, does not, without more, constitute bad faith." *Id*. (quoting *G.F.D. Enterprises, Inc. v. Nye*, 37 Ohio St.3d 205, 213, 525 N.E.2d 10 (1988)). Therefore, although a bank's procedures in dealing with fiduciaries are relevant, bad faith under the Act requires some willful action that goes beyond procedural negligence. *See Nations Title Ins. of N.Y., Inc. v. Bertram*, 140 Ohio App. 3d 157, 164, 746 N.E.2d 1145 (Ohio Ct. App. 2000). Additionally, the failure to make an inquiry into suspicious circumstances, unless a deliberate attempt to evade knowledge of fraud, does not itself constitute bad faith. *Id*.

Even without actual knowledge of fraud, Plaintiffs argue that PNC Bank acted in bad faith. (ECF No. 18, ¶ 87, PageID #489.) On the facts alleged in the amended complaint, this argument fails. First, Plaintiffs' allegations that PNC Bank acted in bad faith and willfully avoided investigating the transactions are not entitled to a presumption of truth because they merely state the elements necessary to a showing of bad faith under the Act. *See Twombly*, 550 U.S. at 570. Next, Plaintiffs allege that PNC Bank had a duty to investigate the unusual transactions and that its failure to do so amounts to bad faith. (ECF No. 18, ¶ 89, PageID #489.) But the failure to investigate, even where negligent, does not itself constitute bad faith. *Bertram*, 140 Ohio App. 3d at 164; *In re Estate of Barney*, 714 F.3d at 927. Because the complaint fails to allege PNC Bank's willful avoidance of investigation or to a commercially

9

unjustifiable policy, Plaintiffs cannot demonstrate bad faith under the Ohio Uniform Fiduciary Act.

## I.C.  Application of the Affirmative Defense

In the absence of actual knowledge or bad faith, the Ohio Uniform Fiduciary Act protects banks against liability for paying and depositing checks on the request of a fiduciary.  Ohio Rev. Code §§ 5815.05–08.  In applying statutory language that lags behind technological advances, courts have expanded the definition of "checks" to include debit cards and wire transfers.  *See Rinehart v. Bank One, Columbus, N.A.*, 125 Ohio App. 3d 719, 731, 709 N.E.2d 559 (Ohio Ct. App. 1998) (equating debit cards and checks for purposes of the Act);  *Richards v. Platte Valley Bank*, 866 F.2d 1576, 1580 (10th Cir. 1989) (equating wire transfers and checks for purposes of the Colorado Uniform Fiduciary Act); *State v. Warner*, 55 Ohio St.3d 31, 61, 564 N.E.2d 18 (1990) (citing *Richards* with approval).  This definitional expansion comports with the Act's purpose of protecting banks from liability for the actions of fiduciaries acting as such.

The key factual basis for all of Plaintiffs' claims comes in Paragraph 60 of the amended complaint, which alleges a series of wire transfers, checks, and deposits that Antonas conducted through PNC Bank.  (ECF No. 18, ¶ 60, PageID #486.)  At bottom in each of their allegations, Plaintiffs aver that these transactions put PNC Bank on notice of suspicious behavior and that it should have intervened in response.  But "under the Act, the Bank had no duty to ensure that the 'entrusted funds were properly utilized for the benefit of the principal[s].'"  *In re Estate of Barney*, 714 F.3d at 927 (quoting *Inkrott*, 55 Ohio St.3d at 26) (cleaned up).  "Nor did the Bank have a

10

duty to 'exercise the highest degree of vigilance in the detection of [Antonas's] wrongdoing.'" *Id.* (quoting *Inkrott*, 55 Ohio St.3d at 26).

Therefore, taking the allegations of the amended complaint as true, and construing them in favor of Plaintiffs, as the Court must in the present procedural posture, under the Act, PNC Bank cannot be held liable for any of these transactions. And because all of Plaintiffs' claims ultimately seek to assign liability to PNC Bank for the results of Antonas's actions, none survives the Act's affirmative defense.

*     *     *

For the foregoing reasons, the Ohio Uniform Fiduciary Act bars each of Plaintiffs' claims.  Plaintiffs attempt to assert an affirmative claim for violations of the Act.  Even if the Act creates such a right of action, the Act's affirmative defense defeats any implied cause of action as a matter of law.

## II.    Negligence

In Count Two, Plaintiff's amended complaint alleges negligence with respect to PNC Bank's oversight of Epitome Investment Fund's account.  (ECF No. 18, ¶¶ 95–06, PageID #489–91.)  To state a claim for negligence, Plaintiffs must show that Defendant (1) had a duty to them, (2) breach of that duty, (3) which proximately caused an injury to Plaintiffs.  *Jeffers v. Olexo*, 43 Ohio St.3d 140, 142, 539 N.E.2d 614 (1989).

Liability for a negligence claim arises only where "one fails to discharge an existing duty."  *Id.*  Further, a plaintiff must be foreseeably "within the circle of those to whom injury may reasonably be anticipated" to show that a defendant owed the plaintiff a duty of care.  *Id.*  In other words, the plaintiff must allege that the

defendant could have reasonably foreseen that its actions could cause harm to the plaintiff or someone like the plaintiff. *Id.* at 143.

In analyzing claims for negligence, courts consider whether the defendant should have foreseen the risk of injury to the plaintiff. *Id.* This analysis largely depends on the defendant's knowledge. *Menifee v. Ohio Welding Prods.*, 15 Ohio St. 3d 75, 77, 472 N.E.2d 707 (1984). Courts consider only facts that a defendant "perceived, or should have perceived, at the time" of its action in determining its level of knowledge—and, therefore, its duty with respect to the plaintiff. *Id.*

"The almost-universal law in this country is that banks owe a duty of care only to their own customers." *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 357 (6th Cir. 2014). Ohio follows that prevailing rule. *Spitzer Mgmt., Inc. v. Interactive Brokers, LLC*, No. 1:13-cv-2184, 2013 WL 6827945, at *4 (N.D. Ohio Dec. 20, 2013); *Driessen v. Woodforest Nat'l Bank*, 940 F. Supp. 2d 584, 591 (S.D. Ohio 2013). Plaintiffs acknowledge that there was no contractual relationship between them and Defendant. (ECF No. 18, ¶ 100, PageID #490.)

Nevertheless, Plaintiffs allege that PNC Bank owed them a duty associated with Antonas's use of the Epitome Investment Fund account. (*Id.*, ¶ 98, PageID #490.) Plaintiffs claim that this duty arises from the Ohio Uniform Fiduciary Act. (*Id.*, ¶ 99, PageID #490.) In support of their contention that the Act imposes a duty to non-customers, Plaintiffs cite two cases. Neither provides the support they need.

First, in *Western Ohio Colt Racing v. Fast*, 2009-Ohio-1303, ¶¶ 38–41 & 49–50 (Ohio Ct. App.), the court discussed the Act only to consider whether the bank acted

12

with bad faith such that it could be held liable for the actions of the fiduciary.  In other words, the cases took up application of the affirmative defense.  There, the court held that the bank bore no "common law duty" to the non-customer plaintiff.  *Id.* at ¶ 29.  At most, *Western Ohio Colt Racing* acknowledged that a bank might have liability for a fiduciary's breach under the Act if it had actual knowledge or acted (or failed to act) in bad faith.  *Id.* at ¶ 38.  It does not establish that the Act creates an affirmative duty to non-customers that the common law does not.

Second, Plaintiff cites *Elkin Valley Baptist Church v. PNC Bank, N.A.*, 748 F. Supp. 3d 293 (W.D. Pa. 2024).  There, the court determined that the bank violated a common-law duty "under Pennsylvania law" because it had taken the "substantial affirmative risk-creating" step of "opening a bank account for an unidentified holder." *Id.* at 348–50.  Even setting aside the fact that the case involves a different State's substantive law, the case is inapposite where, as here, no such conduct is alleged.

Taking all well-pleaded factual allegations in the complaint as true, Plaintiffs fail to demonstrate that PNC Bank owes them a duty as non-customers.  Accordingly, Plaintiffs fail to state a claim for negligence.

## III.    Fraud

In Count Three, Plaintiffs claim that PNC Bank's failure to alert them to Antonas's activity amounted to fraud by omission or concealment.  (ECF No. 18, ¶¶ 107–14, PageID #491–92; ECF No. 22, PageID #572.)  This claim fails both under the heightened pleading standard of Rule 9(b) and under Ohio law.

### III.A. Rule 9(b)

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Rule 9(b) requires plaintiffs to specify the "who, what, when, where, and how" of the alleged fraud or omission.  *Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 614 (6th Cir. 2024) (quoting *Sanderson v. HCA—The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006)). These requirements "put defendants on notice as to the nature of the claim."  *Id.* at 615 (quoting *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012)).

Here, Plaintiffs do not dispute that their complaint fails to meet the heightened pleading standard of Rule 9(b).  Instead, Plaintiffs ask the Court to relax the rule, arguing that much of the information they need lies within Defendant's control, and they need discovery to plead with particularity.  (ECF No. 22, PageID #572–74.)  In support, they cite *Michaels Building Co. v. Ameritrust Co.*, 848 F.2d 674, 680 (6th Cir. 1988), where the court "relaxed" Rule 9(b) because "the information 'missing' from [the] plaintiffs' complaint [was] far outweighed by the sufficiency of the description of the claim against the defendants."

However, "*Michaels* [*Building*] did not obviate the need for a plaintiff to specifically allege the essential elements of fraud."  *United States ex rel. Bledsoe v. Community Health Sys., Inc.*, 501 F.3d 493, 505 (6th Cir. 2007).  Instead, the *Michaels Building* Court emphasized that the complaint provided an abundance of details:  the participants to the alleged fraud; the specific representations at issue; the misleading or false nature of those statements; each statement's time, place, and content; the overall fraudulent scheme; the defendants' fraudulent intent; the plaintiffs' reliance

14

on the fraud; the resultant injury; and copies of the allegedly fraudulent loan documents. *Michaels Bldg.*, 848 F.2d at 679. "Indeed, the only fact that [the] plaintiffs omit[ted] from their complaint are the identities of [other borrowers]— information which lies in the hands of the defendant." *Id.* at 680.

In contrast, Plaintiffs' complaint contains far less information. Indeed, they make no argument that they plead a level of detail approaching that of *Michaels Building* and make no showing of the specific information they would need in discovery to fill in the many gaps in the amended complaint. Although courts are reluctant to dismiss actions where the "facts underlying the claims are within the defendant's control," Plaintiffs have not identified any facts within Defendant's control that would allow it to state the elements of its fraud claim. *Michaels Bldg.*, 848 F.2d at 680. Instead, Plaintiffs generally invoke "PNC's [anti-money laundering] policy, red flags triggered, failure to report suspicious activity, or facts pertaining to the extent of PNC's knowledge." (ECF No. 22, PageID #574.) These broad requests, untethered to any legal argument directed at the elements of Plaintiffs' claims, amount to a request to open discovery without meeting Rule 9(b) at all and, potentially, "a 'fishing expedition' for . . . otherwise claimless plaintiff[s]." *Michaels Bldg.*, 848 F.2d at 680.

### III.B. Common Law Fraud

Even setting aside the requirements of Rule 9(b), Plaintiffs fail to plead the requisite elements of fraud under Ohio common law. Under Ohio law, a claim of fraud by omission or concealment must establish: (1) concealment, in violation of a duty to disclose, of (2) a material fact, done with (3) knowledge of falsity and (4) the

intent to mislead another into reliance upon the concealment, as well as (5) justifiable reliance and (6) an injury proximately caused by the reliance. *Burr v. Board of Cnty. Comm'rs of Stark Cnty.*, 23 Ohio St. 3d 69, 69, 491 N.E.2d 1101 (1986). Because failure to meet any of these elements proves fatal to Plaintiffs' claim, the Court focuses on the first: duty to disclose.

A duty to disclose "arises when one party has information that the other party is entitled to know because of a fiduciary or other similar relation of trust and confidence between them." *Federated Mgmt. Co. v. Coopers & Lybrand*, 137 Ohio App. 3d 366, 384, 738 N.E.2d 842 (2000) (citing *State v. Warner*, 55 Ohio St. 3d 31, 54, 564 N.E.2d (1990)). These relationships of "trust and confidence" only extend so far. *Id.* To determine whether a defendant owes particular plaintiffs a duty to disclose, courts consider whether the plaintiffs are "a known group possessed of vested rights and marked by a definable limit." *Id.* at 385.

The amended complaint makes no affirmative allegation that PNC Bank owed Plaintiffs a duty to disclose, and Plaintiffs' opposition to the motion to dismiss provides only a conclusory statement that PNC Bank had such a duty. (ECF No. 22, PageID #574.) The amended complaint does not allege that there was any fiduciary or similar relationship of trust and confidence between Plaintiffs and PNC Bank. Indeed, Plaintiffs "have not shown that they were a group specifically known to [Defendant] such that [Defendant] owed them some sort of duty to disclose." *Federated Mgmt. Co.*, 137 Ohio App. 3d at 385 (determining that a company's creditor

16

bank did not have a duty to disclose information contradicting the company's financial statements to investors in the company).

Instead, the amended complaint alleges only that PNC Bank employees "were aware that Antonas was a fiduciary to the investors in the Epitome Hedge Fund." (ECF No. 18; ¶ 69, PageID #487.)  This group of investors presents an open and indefinite class "akin to the extensive, faceless, and indeterminable investing public-at-large."  *Id.*  Therefore, the amended complaint fails to support any allegation that PNC Bank owed Plaintiffs a duty to disclose.  Accordingly, Plaintiffs fail to state a claim for fraud.

## IV.  Aiding and Abetting Tortious Conduct

In Count Four, Plaintiffs bring a claim for aiding and abetting tortious conduct. (ECF No. 18, ¶¶ 115–20, PageID #492–93.)  But Ohio law provides no such cause of action.  In 1988, the Ohio Supreme Court ruled that, under the circumstances of that case, it could not hold the defendant "liable on a concert of action theory as set forth within Section 876(b)" of the Restatement (Second) of Torts.  *Great Cent. Ins. Co. v. Tobias*, 37 Ohio St. 3d 127, 130, 524 N.E.2d 168 (1988).  Following that decision, Ohio courts have not recognized claims for aiding and abetting fraud or other tortious conduct have not prevailed in Ohio courts.  *DeVries Dairy, LLC v. White Eagle Coop. Ass'n*, 132 Ohio St. 3d 516, 2012-Ohio-3828, 974 N.E.2d 1194, ¶ 2 (collecting cases). In 2012, answering a certified question from the Northern District, the Ohio Supreme Court observed that it had "never recognized [such a] claim" and "decline[d] to do so under the circumstances" of that case.  *Id.* at ¶ 2.

17

Since then, courts in Ohio—State and federal—continue to reject aiding-and-abetting claims in different contexts. *See, e.g., Spaude v. Mysyk*, No. 1:16-cv-1836, 2017 WL 9485666, at *14 (N.D. Ohio July 14, 2017) (collecting State and federal cases); *Pharos Capital Partners, LP v. Touche, LLP (In re National Century Fin. Enters., Inc., Inv. Litig.)*, 905 F. Supp. 2d 814, 834–35 (S.D. Ohio 2012); *Antioch Co. Litig. Tr. v. Morgan*, No. 3:10-cv-156, 2012 WL 6738676, at *2 (S.D. Ohio Dec. 31, 2012) (noting that, after *DeVries Dairy*, "Ohio courts are now dismissing claims for aiding-and-abetting").

Plaintiffs acknowledge that Ohio law does not recognize a tort claim for aiding and abetting. Nonetheless, they plead that Ohio law "should formally recognize such a claim." (ECF No. 18, ¶ 120, PageID #493.) Relying on a decision from the Pennsylvania Supreme Court, Plaintiff asserts that the Ohio Supreme Court should revisit the issue. (ECF No. 22, PageID #576–78). In that decision, the Pennsylvania Supreme Court determined that Pennsylvania law "recognizes the tort of aiding and abetting fraud, and the scienter requirement for this cause of action is actual knowledge of the underlying fraud." *Marion v. Bryn Mawr Tr. Co.*, 288 A.3d 76, 94 (Pa. 2023). In so holding, the Pennsylvania Supreme Court reasoned that "a number of other states recognize this specific cause of action," including "Arizona, New York, Washington, New Jersey, Connecticut, Massachusetts, and Tennessee." *Id.* at 86.

Based on *Marion*, Plaintiffs request that the Court certify the questions "whether a claim for aiding and abetting fraud should be recognized" and "what must a plaintiff allege and prove to sustain such a claim" to the Ohio Supreme Court. (ECF

18

No. 22, PageID #579.)  In light of the Ohio Supreme Court's consistent decisions not to recognize such a cause of action, the Court has little trouble venturing the *Erie* guess that it would not answer the question differently in this case.  *See Combs v. International Ins.*, 354 F.3d 568, 577 (6th Cir. 2004).

In any event, even if the Ohio Supreme Court were to recognize this cause of action, Plaintiffs fail to plead the required elements.  According to the amended complaint, construed in Plaintiffs' favor, PNC Bank did not commit any "tortious act in concert," its actions or omissions did not breach a duty, and Plaintiffs make no allegation of "substantial assistance or encouragement" of Antonas's fraud.  For these reasons, Plaintiffs fail to state a claim for aiding-and-abetting tortious.

## V.      Civil Damages for Criminal Acts

In Count Five, Plaintiffs allege that Antonas and Epitome Investment Fund committed the criminal act of theft by deception in violation of Section 2913.02(A)(3) of the Ohio Revised Code and that PNC Bank aided and abetted him in violation of Section 2923.03(A)(2).  (ECF No. 18, ¶ 122, PageID #493.)  Section 2307.60(A)(1) permits anyone "injured in person or property by a criminal act [to] recover full damages," including costs, attorney's fees, and punitive damages.  The statute does not require criminal conviction for liability, only a "criminal act."  *Id.*; *see Buddenberg v. Weisdack*, 161 Ohio St. 3d 160, 2020-Ohio-3832, 161 N.E.3d 603, ¶¶ 11–13.

Section 2923.03(A)(2) criminalizes "[a]id[ing] or abet[ting] another in committing [an] offense" with "the kind of culpability required for the commission of [the] offense."  To have liability, the defendant must have "supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of

19

the crime," and the defendant must have "shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St. 3d 240, 245, 2001-Ohio-1336, 754 N.E.2d 796.  In other words, to show that PNC Bank aided and abetted a criminal offense, Plaintiffs must show that it acted with the same intent that is required for the underlying crime. Here, the alleged criminal offense, theft by deception, occurs where one "with purpose to deprive the owner of property or services . . . knowingly obtain[s] or exert[s] control over either the property or services . . . [b]y deception."  Ohio Rev. Code § 2913.02(A)(3).

Plaintiffs fail to allege that Defendant acted with "purpose to deprive the owner of property or services."  Ohio Rev. Code § 2913.02(A).  The amended complaint makes no allegation that PNC Bank acted with the *purpose* of depriving Plaintiffs of their funds.  Even the conclusory allegations in the amended complaint stop a step short of that, averring only that Defendant "had actual knowledge" of criminal activity. (ECF No. 18, ¶¶ 63–69, PageID #486–87.)  Because they fail to allege the requisite criminal intent for theft by deception, the amended complaint fails to state a claim under Section 2307.60 of the Ohio Revised Code.

## VI.    Civil Conspiracy

The final count of the amended complaint brings a claim for civil conspiracy. Plaintiffs concede that "a claim for civil conspiracy is derivative and cannot be maintained absent an unlawful act that is actionable without the conspiracy."  (ECF No. 22, PageID #581.)  Accordingly, having dismissed all of Plaintiffs' substantive claims, the Court must also dismiss the claim for civil conspiracy.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss

(ECF No. 19).

**SO ORDERED.**

Dated:  September 17, 2025

_____
J. Philip Calabrese
United States District Judge
Northern District of Ohio